STATE OF MISSOURI ex rel. GEORGE E. SHEWALTER, Appellant, v. LLEWELLYN JONES et al., Respondents.

Kansas City Court of Appeals, February 7, 1910.

1. **MUNICIPAL CORPORATIONS: Public Utilities: Unreasonable Charges.** The city of Independence sells electric light to private consumers. It has an ordinance providing that in case of non-payment of a bill the city may cut off the light from such customer, and before he can be reinstated he must pay all delinquent bills and a penalty of fifty cents. Where a new customer begins the service or an old one changes his residence, no charge is made for turning on or off the current. *Held*, the fifty-cent penalty is unjust, discriminatory and oppressive.

2. **PUBLIC UTILITIES: Regulation: Rules.** Whether public utilities are conducted by municipalities or by public service corporations they are subject to the control of the courts and all classes of people are entitled to proper service without discrimination or individual oppression. Rules and regulations necessary to the proper conduct of the business may be imposed by those dealing in public utilities, but such rules must be reasonable and just.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell,* Judge.

REVERSED AND REMANDED (*with directions*).

*Olney Burris* and *J. D. Shewalter* for appellant.

(1) It is not permissible, either at common law or under the statute, to traverse the allegations of the petition, and then, as new matter, confess and seek to avoid them; and where this is attempted, plaintiff is entitled to judgment on the pleadings. Bank v. Stone, 93 Mo. App. 292, and authorities there cited; Price v. Mining Co., 83 Mo. App. 474; State ex inf. v. Jockey Club, 200 Mo. 64. (2) Where demand for payment is made and no refusal, but a failure to pay solely for the want of a blank check (that being the usual course of payment, check being good and no objection on that account), a reasonable time is allowed, under all the circumstances, to reach the office and make payment. Turning off the light without affording such opportunity was illegal and arbitrary. Woods v. Dial, 12 Ill. 72. (3) The court refused instruction No. 1 to that effect, and while instructions in such cases are not usual, it showed the view of the law taken by the lower court. Relator stated that she would pay the bill, did so the same day, and under the evidence at the earliest reasonable moment, and yet the light was cut off. (4) Where, as in this case, all dues have been paid, a demand of any additional sum as a penalty or fine, adjudged, fixed and determined by one of the parties to the contract, as a con-

dition precedent to the restoration of the consumer, is illegal. The proposition needs no authority; but see: State ex rel. v. Kinloch Tel. Co., 93 Mo. App. 361, and cases in opinion; Water Co. v. State, 46 Neb. 194, 50 Am. St. Rep. 610, 64 N. W. 714; Turner v. Water Co., 171 Mass. 329, 68 Am. St. Rep. 432, 50 N. E. 634; Shepard v. Gas Co., 6 Wis. 653, 70 Am. Dec. 479, points 5 and 6, 1. c. 484; Water Co. v. Wolfe, 63 Am. St. Rep. 843; Smith v. Water Co., 16 So. 123. (5) Mandamus is the proper remedy. In fact there is no other adequate remedy, except restoration. State ex rel. v. Water Co., 52 Mo. App. 310; State ex rel. v. Kinloch Tel. Co., 93 Mo. App. 361. And respondents, though wrongfully, are in actual control. They cut it off and they alone can restore it.

*C. C. Madison* and *A. C. Southern* for respondents.

(1) Section 5845, Revised Statutes 1899, places the control of the electric light plant with the city council and authorizes it to operate the same and make regulations. The three defendants who are members of the committee, are of course, answerable as members of the council but they are not brought into court in that capacity and are only a minority of that body. The council is the body charged with the duty and responsibility of operating the plant and its functions in this respect are not merely "legislative" as relator contends. The point respondents make upon the question of improper parties defendant, is not merely a technical one, for if they are not vested with the authority to act then of course relator's case must fail on its merits. Relator is precluded from asking the relief sought by the very allegations of the writ that respondents are acting without authority. If it was sought to prevent them from continuing to act quite another question would be presented but here we have the remarkable situation of a party saying "you are doing something you have no right to do" and in the

next breath demanding that those very illegal acts be continued. Counsel cite authorities holding that the suit may be maintained against the officers "whose duty it is to act." We quite agree with learned counsel upon that proposition but fail to follow them in the application of the rule. In order to sustain their position they must not only nullify the statute above cited but must also wipe out the statements of fact set forth in the writ. State ex rel. v. Gentry, 112 Mo. App. 598. (2) That mandamus will not lie unless appellant shows a clear right, is a familiar elementary principle. Mandamus will not issue when the official act to be performed depends on the act, approval or co-operation of a third person, not a party. 26 Cyc., p. 165 (e). (3) Relator is not entitled to relief in any event, since she has failed to comply with the requirements of a reasonable ordinance. There is no allegation or proof upon which the court would be justified in finding this ordinance invalid. Under the pleadings its invalidity is not an issue. Being a matter of public concern, affecting all the taxpayers and consumers of electricity its provisions could not be waived by any subordinate even by express agreement. It is claimed that a sum in excess of the amount allowed by the ordinance was demanded but this is of no avail since there is no attempt to show that relator ever offered to comply with it. In order to invoke the protection of the ordinance it is essential that a tender of the proper amount be made. McDaniel v. Waterworks Co., 48 Mo. App. 280.

JOHNSON, J.—The city of Independence is engaged in the business of providing electric light to its citizens. Relator, who used the light in her home, became delinquent in the payment of the bills for two months and on account of the delinquency, the superintendent of the business shut off the electricity and discontinued the service. Relator at once paid the

bills and demanded the restoration of the service, but the superintendent refused compliance with the demand except on condition that relator pay a penalty of one dollar. Relator refused and brought suit by mandamus against the respondents to compel them to restore the light. An alternative writ was issued, respondents filed their return, the cause was tried, judgment was entered in favor of respondents and relator appealed.

The evidence of relator tends to show that in discontinuing the service, respondents acted arbitrarily and oppressively but her evidence is opposed by evidence of respondents to the effect that this act of the superintendent was reasonable and proper and was performed pursuant to rules and regulations prescribed by the city. In the view we take, all respondents contend for on this branch of the case may be conceded and we shall assume, arguendo, that relator was delinquent; that under the rules prescribed by ordinance, the superintendent was compelled to discontinue the service and that in so doing, he acted with propriety and without oppression.

An ordinance of the city provided "that all bills for electric lights furnished customers shall be discounted ten per cent if paid on or before the tenth of each month and if the same be not paid by the twentieth of each month, the electric light furnished to such delinquent shall be cut off. Any person whose electric light may have been cut off under the terms of this ordinance may be reinstated upon payment to the city clerk of all bills for electric light which may be in arrear and a penalty of fifty cents."

Apparently, the superintendent fell into the error of demanding one dollar instead of fifty cents from inferring that a written contract existed between relator and the city which, in the printed form used in all such instances, contained the provision that "the total bill due must be paid and $1 in addition, before

service shall be reinstated on the premises." No such contract existed between the parties and, therefore, the right of the city to exact a fee or penalty for turning on the current must rest, if it exists, on the ordinance we have quoted. Our decision, however, will leave out of account this error of the superintendent and for present purposes will treat the case as though he had demanded payment of fifty cents instead of one dollar.

These concessions reduce the case to a single question: Is the city entitled to exact payment of a penalty of fifty cents from relator as a condition precedent to a resumption of the discontinued service? The trial court answered that question in the affirmative; we answer it in the negative.

Necessarily, most public utilities are monopolies. Whether owned and conducted by municipalities or by public service corporations, they deal in the prime necessities of urban life and must be and are subject to the control of the courts to the end that all classes of people may enjoy proper service without discrimination or individual oppression. The law recognizes no distinction between municipal governments and public service corporations in the service of the public. Municipal ownership imposes the duty on the city to give reasonably good service, to treat all classes of citizens alike, and to impose only such rules and regulations as are reasonable and just. If we thought the ordinance under consideration was reasonable in the rule sought to be enforced by the city, we would say that relator has no case since the law would presume that she knew of the ordinance and would imply a contract between her and the city of which that ordinance would be a part. But we say the ordinance is unjust, discriminatory and, therefore, oppressive.

That part of the regulative ordinances which authorized the city to discontinue the service of a delinquent customer is reasonable for, obviously, neither

the city nor a private corporation could run its business successfully without some such regulation. [Vanderburg v. Gas Co., 126 Mo. App. 600.] But when the delinquent customer pays the amount due on his bills at the time the service was shut off, he is entitled to have the service restored without the imposition of any penalties. Even on the theory that the penalty is so-called and is nothing more than a reasonable charge to cover the expense of shutting off and turning on the light, the right to enforce it cannot be recognized. The expense of turning on and off the current enters into the monthly rates charged for the service. This is made certain by the fact that no charge, as such, is made to patrons for such service. If a man should change his residence in the city, his light would be turned off at his old abode and turned on at the new without extra charge. To force relator to pay such extra charge would be to compel her to pay again for what she already has paid, and this not only would be discriminative but would accord the city the right to use its monopoly as an instrument of extortion. These views are well supported by authority. [State ex rel. v. Tel. Co., 93 Mo. App. l. c. 361; Water Co. v. State, 46 Neb. 194; Turner v. Water Co., 171 Mass. 329; Shepard v. Gas Co., 6 Wis. 536; Smith v. Water Co., 104 Ala. 315; Smith v. Tel. Co., 42 Hun (N. Y.) 454.]

The case of Water Co. v. State, supra, is squarely in point. There the Supreme Court of Nebraska says: "The cost and expense of turning off and on the water for a patron enters into and forms a part of the semi-annual rent paid in advance by such patron under the rules of the company. It would be unjust to permit the Water Company to exact payment for this service a second time. An enforcement of the rule would compel a citizen who had once made default in his water rent, though he afterwards paid all such rents, to pay

a greater price or rate for water than that paid by another citizen for the same water under the same conditions."

This ruling received the express approval of the Supreme Judicial Court of Massachusetts in Turner v. Water Co., supra, and we think its soundness cannot be successfully questioned.

The point is made by respondents of a defect of proper parties, but this is not before us on the record and will not be considered. The learned trial judge should have adjudged the issues for relator.

The judgment is reversed and the cause remanded with directions to issue the peremptory writ. All concur.