# Richmond

CITY OF ROANOKE v. F. MARK FISHER AND OTHERS.

April 23, 1952.

Record No. 3923.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

652

The opinion states the case.

*Randolph G. Whittle* and *James N. Kincanon*, for the appellant.

*Tom Stockton Fox*, for the appellees.

SMITH, J., delivered the opinion of the court.

This is a companion case to *Roanoke v. Hill, ante,* p. 643, 70 S. E. (2d) 270.

On January 1, 1949, certain areas of Roanoke county, including the Williamson Road Sanitary District No. 1, were annexed to and became a part of the city of Roanoke. The council of the city of Roanoke had on December 31, 1948, passed ordinance No. 9745, the first paragraph of which reads as follows:

"AN ORDINANCE to ratify, continue and impose certain charges heretofore imposed by the Board of Supervisors of Roanoke County, Virginia, on all owners of real property which may at any time after the passage of this ordinance be brought within the corporate limits of the City of Roanoke, as a result of annexation or otherwise, and which real property may have been connected with any Sanitary District sewer system in said County since February 1, 1938, and imposing like charges on all owners of real property which may hereafter be connected with any sewer system within said former Sanitary Districts; providing when and where said charges are to be paid, premiums and penalties with regard to the payment thereof; and providing for an emergency."

On March 21, 1949, the appellees, twelve in number, all of whom are residents of the city of Roanoke and own real estate in the newly annexed portion of the city formerly known as the

Williamson Road Sanitary District No. 1, filed their bill of complaint in accordance with section 8-578 of the Code of 1950 (Michie Code 1942, § 6140a) against the appellant, city of Roanoke, praying that a declaratory judgment or decree be entered adjudicating that ordinance No. 9745 be declared invalid, null, and void.

The appellant's demurrer to the bill of complaint was overruled by the trial court and the appellant filed its answer. After hearing the case on its merits upon a stipulation of facts, the trial court on February 26, 1951, entered a final decree which granted the relief prayed for in the appellees' bill of complaint and stated, in part, that "* * * the ordinance here complained of, being Ordinance No. 9745 of the City of Roanoke, is invalid and illegal in applying sewer charges upon the property of the complainants and the other owners of property in the City of Roanoke upon whom said ordinance attempted to impose such charges, said charges violating the rule of uniformity and equality of taxation; * * *"

The appellant's assignments of error raise the following question for decision: May a city, after annexing the whole of a sanitary district and acquiring title to all the public improvements within the district, and after becoming obligated to pay the principal and interest on the outstanding bonded indebtedness of the district (which debt was incurred to finance the construction of the sanitary sewer system), legally continue the collection of sewer rental charges theretofore legally established by the county for the sanitary district prior to its annexation, until either (1) the district's bonded indebtedness has been paid, or (2) the land within the former sanitary district has become subject to the city's general tax rate? Our answer is in the negative for the reasons hereinafter presented.

In 1935, by proper procedure, a portion of Big Lick Magisterial District of Roanoke county was constituted the Williamson Road Sanitary District No. 1 for the primary purpose of establishing a sanitary sewer system. Subsequently a resolution of the board of supervisors, pursuant to the wishes of the voters of the sanitary district, authorized the issuance of bonds not to exceed $150,000 to finance the construction of the sewer system in the sanitary district. The sewer system was completed and went into operation in 1938. The funds for maintaining the sewer system and paying the principal and interest on the bonded indebtedness were initially provided by a special tax

levied on all taxable property in the sanitary district and a monthly sewer rental charge imposed on the owners of all land abutting on and connected with the sewer system. Beginning with 1947 the special tax levy for the sewer system was repealed and the monthly sewer rental charges were alone relied on for maintenance and debt service in connection with the sewer system and this situation prevailed up to the time that the Williamson Road Sanitary District No. 1 was annexed to the city of Roanoke.

On the date that the city of Roanoke annexed the former Williamson Road Sanitary District No. 1, there was an unpaid and outstanding balance of $113,000 still due on the sewer bonds of the sanitary district and the annexation decree provided that the appellant make payments to Roanoke county, ten days before each due date, of an amount sufficient to retire the bonds as they matured, less the amount of $13,958.17 held by the county in a reserve fund on the date of the annexation.

The annexation decree is silent on the point as to whether or not the city of Roanoke would continue the monthly sewer rental charges within the area formerly comprising the sanitary district. It is stipulated before us, however, that no such charges are now imposed on any other lands within the city of Roanoke, the sewer systems therein being financed from the general funds of the city.

The decree of the trial court in this case and the argument of the appellees here are based on the assumption that the monthly sewer rental charge was in reality a tax, a special assessment for local improvements. It was on this theory that the trial court held ordinance No. 9745 invalid as a violation of the rule requiring uniformity and equality of taxation. On the other hand, the appellant has contended both in the trial court and in this court that the monthly sewer rental fee was in fact a service charge and not a tax. Admittedly the sewer charge as imposed on the users of the sewer system in the sanitary district prior to the annexation was a service charge and not a tax and the similar charge imposed by the city of Roanoke's ordinance No. 9745 was intended to be a service charge and not a tax. Its language expressly so states.

In a proper situation the city of Roanoke has the authority to finance the cost of a sewer system either by a tax in the form of an assessment for local improvements or by a service charge as it has attempted to do here. Section 15-669 of the Code of 1950

(Michie Code 1942, § 3067) permits a tax or assessment "* * * for either the construction or the use of sewers; * * *", and Acts of 1942, ch. 483, p. 960, amending section two of the charter of the city of Roanoke, empowers the city, "Tenth. To establish and enforce water rates and rates and charges for public utilities, or other service, products, or conveniences, operated, rendered or furnished by the city; * * *."

In support of their contention that the service charge imposed by the city of Roanoke was in reality a tax, the appellees cite the case of *Southern Ry. Co.* v. *Richmond,* 175 Va. 308, 8 S. E. (2d) 271, 127 A. L. R. 1368, where this court held that a charge for the use of sewers was a special assessment. However, in that case there was no issue as to whether the charge was a service charge or a tax. The ordinance by virtue of which the city of Richmond levied the tax there involved was enacted pursuant to the city's charter which empowered the city to "* * * assess and collect compensation for the use of such sewers, culverts or drains, * * *." The word "assess" as used in the charter had reference to assessments for local improvements and a tax was authorized as the source of revenue; therefore, what was said in that case is not controlling in the situation now before us.

On the other hand, in two recent cases this court has held that a payment for the use of the Hampton Roads Sanitation District's sewer system was a service charge and not a tax. *Hampton Roads Sanitation Dist. Comm.* v. *Smith, ante,* p. 371, 68 S. E. (2d) 497; *Bott* v. *Hampton Roads Sanitation Dist. Comm.,* 190 Va. 775, 58 S. E. (2d) 306. In this situation it should be noted that a service charge and not a tax was contemplated, for the legislative enactment authorizing such charges (Code section 21-180) uses the words "* * * fees, rents, or other charges for the use and services of the sewage disposal system."

In determining whether ordinance No. 9745 of the city of Roanoke involves a tax or a service charge we should be controlled by the intention of the city council as expressed by the clear and unambiguous language of ordinance No. 9745 which provides for a service charge and not a tax.

The appellant consequently contends that since the sanitary district laws (now codified as Chapter 2, Title 21, of the Code of 1950) authorized the system of sewer charges previously imposed by the Williamson Road Sanitary District No. 1, the city of Roanoke is impliedly authorized by the annexation laws

('Chapter 8, Title 15, Code of 1950) to continue to collect the sewer charges in lieu of taxes until it is permitted to impose the same general tax rate on land within the former sanitary district as was imposed on all other land within the city prior to the annexation.

■ It is true that the sanitary district was authorized by law to impose the sewer charges. However, when the sanitary district was annexed to the city of Roanoke it ceased to exist as a sanitary district and the city by the process of annexation did not become clothed with the powers previously inherent in the sanitary district. It is to be remembered that the city of Roanoke, by its ordinance, initated the proceedings leading to the annexation of the sanitary district, and Code section 15-125 provides that the ordinance shall fix "* * * the terms and conditions upon which it desires to annex such territory, as well as the provisions which are made for its future management and improvement." Furthermore, Code section 15-135 provides that the three-judge annexation court shall determine "* * * whether the terms and conditions set forth in the ordinance are reasonable and fair, and whether fair and just provisions are made for the future management and improvement of such territory and the rendering of needed services. * * *" It was contemplated by the framers of the annexation laws that there would be a reasonable and fair adjustment of all interests between the annexing town or city, the lands to be annexed, and the county from which the lands were being annexed. This is reflected in the laws which provide that the annexing city or town shall reimburse the county for a just proportion of any existing debt of the county and the value of permanent public improvements. Special tax treatment is also accorded the annexed lands by section 15-141 of the Code for a period of five years or until substantial public improvements are made in the annexed area.

■ The appropriate time for the city of Roanoke to have raised the question of imposing a sewer charge was when it annexed the sanitary district from the county. The question of whether a sewer service charge previously legally imposed by the sanitary district may thereafter be continued by the county or similarly imposed by the city, or divided between the city and the county, or imposed by neither, is a problem which should be decided by the annexation court and provided for in its annexation decree. For example, in the recent case of *Fairfax* v. *Alexandria, ante,* p. 82, 68 S. E. (2d) 101, portions of the county

of Fairfax, including part of a sanitary district, were annexed by the city of Alexandria. As a result of a special situation existing at that time, the decree of the annexation court, which was affirmed on appeal, provides at page 99 of the printed record of that case, that the county of Fairfax "* * * shall have the right commencing with the effective date of this decree to charge and collect an annual service charge equal to that prevailing in Sanitary District No. 1 from each of the sewer connection users within the area to be annexed, and a like sum from any person within said area to be annexed who shall connect to and use said sewer." Since the decree of the annexation court in the case before us made no provision for the continuation of the service charge by either the city or the county it may be assumed that the court did not intend that there should be a service charge paid thereafter.

█ The appellant also contends that the action of the trial court in decreeing ordinance No. 9745 invalid and relieving the appellees of the payment of the duly established sewer charges violates the terms of the contract entered into between the county of Roanoke, the Williamson Road Sanitary District No. 1, and bondholders of the sanitary district, and abridges the contractual rights of these bondholders without due process of law. It is a sufficient answer to this contention to quote from the opinion in the case of *Fairfax* v. *Alexandria, supra,* at page 91, where it is said: "Such court, [annexation court] in ordering the territory to be annexed, is required to protect the creditors of such county, or any of its political sub-divisions by compelling the annexing city to assume a just proportion of any existing indebtedness. The annexation court required the city of Alexandria to assume a just proportion of the existing indebtedness of Sanitary District No. 1. Hence, the security, upon the faith and credit of which the sanitary bonds were issued, has not been impaired by including a portion of Sanitary District No. 1 in the territory annexed to the city."

As already pointed out herein, a similar provision was made by the annexation court in the instant case for the protection of the bondholders of the Williamson Road Sanitary District No. 1.

█ The city of Roanoke further complains that it would be inequitable to relieve the residents of the former sanitary district from paying the sewer charge, because to do so would have the effect of conferring upon the appellees and other owners of

property within the sanitary district, without further cost for either construction, operation or maintenance, the privilege of the use of the sanitary sewer system within their area, at the expense of all other residents of the city, which would be in violation of the provisions of the Constitution, Art. I, § 4, and Art. XIII, § 170. As stated before, the equities of this problem were questions which properly should have been settled in the annexation proceeding. The decree of the annexation court having now become final and operative, the area within the former sanitary district is now a part of the city of Roanoke and, except as specially provided by law and the annexation decree, is entitled to the same treatment by the city of Roanoke as any other area within the city's limits. To permit the city of Roanoke to impose a service charge for the use of the sewers on the owners of land in the former sanitary district when no similar charge is imposed on the owners of land in the other parts of the city would be decidedly inequitable. A municipality has no more right to practice discrimination as to its services or the rates imposed therefor, than does a privately owned public utility. *Montgomery* v. *Greene,* 187 Ala. 196, 65 So. 783; 1 Pond, Public Utilities 602 (4th ed. 1932).

For the reasons set forth herein, the trial court's decree of February 26, 1951, which declared ordinance No. 9745 invalid and illegal, is affirmed.

*Affirmed.*